**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AIRLINES FOR AMERICA, | No. 22-15677 |
| *Plaintiff-Appellant*, | D.C. No. 3:21-cv-02341-EMC |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, | OPINION |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted April 21, 2023
San Francisco, California

Filed August 29, 2023

Before: Mary M. Schroeder, Consuelo M. Callahan, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Callahan;
Dissent by Judge Schroeder

# SUMMARY[*]

## Preemption

The panel reversed the district court's grant of summary judgment in favor of the City and County of San Francisco in an action challenging the City's Healthy Airport Ordinance, which requires airlines that contract with the City to use San Francisco International Airport to provide employees with certain health insurance benefits.

Federal law generally preempts state or local government action that has the force and effect of law. But when a state or local government buys services or manages property as would a private party, it acts as a market participant, not as a regulator, and courts presume that its actions are not subject to preemption.

Airlines for America, a representative of the airlines, alleged that the City, in enacting the ordinance and amending SFO's contract with the airlines, acted as a government regulator and not as a market participant, and the ordinance therefore was preempted by multiple federal statutes. The district court held that the City was a market participant and granted its motion for summary judgment.

The Healthy Airport Ordinance contains a civil penalty provision authorizing the Airport Director to impose daily fines, with discretion to increase the amount of the fines. The ordinance also contains a civil penalty provision authorizing the City to collect liquidated damages. The City

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

can seek to enforce these provisions in a municipal administrative proceeding. Reversing and remanding, the panel held that the two civil penalty provisions carried the force of law and thus rendered the City a regulator rather than a market participant.

Dissenting, Judge Schroeder wrote that, in amending SFO's contract with the airlines, the City acted as a market participant and at most included a contractual penalty clause that might be unenforceable.

## COUNSEL

Shay Dvoretzky (argued), Parker Rider-Longmaid, and Hanaa Khan, Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; Jason D. Russell, Zachary M. Faigen, and Mitchell A. Hokanson, Skadden Arps Slate Meagher & Flom LLP, Los Angeles, California; Patricia N. Vercelli and Riva Parker, Airlines for America, Washington, D.C.; for Plaintiff-Appellant.

Melissa C. Allison (argued), Scott P. Lewis, Austin P. Anderson, Paul M. Kominers, and Annie E. Lee, Anderson & Kreiger LLP, Boston, Massachusetts; Wayne K. Snodgrass, Deputy City Attorney; David Chiu, City Attorney; San Francisco City Attorney's Office, San Francisco, California; for Defendant-Appellee.

Dolores Bastian Dalton, Goldfarb & Lipman LLP, Oakland, California, for Amici Curiae League of California Cities and California State Association of Counties.

## OPINION

CALLAHAN, Circuit Judge:

The City and County of San Francisco (the City) owns and operates San Francisco International Airport (SFO or the Airport). Airlines for America (A4A) represents airlines that contract with the City to use SFO. In 2020, in response to the COVID-19 pandemic, the City enacted the Healthy Airport Ordinance (HAO) requiring the airlines that use SFO to provide employees with certain health insurance benefits. A4A filed this action in the Northern District of California alleging that the City, in enacting the HAO, acted as a government regulator and not a market participant and therefore the HAO is preempted by multiple federal statutes. The district court agreed to the parties' suggestion to bifurcate the case to first address the City's market participation defense. The district court held that the City was a market participant and granted its motion for summary judgment.      A4A appeals, asserting that the City acted as a regulator and not a market participant because (a) violations of the HAO constitute violations of criminal law, (b) violations of the HAO are punishable by civil penalties not available to a private party, and (c) the City fails the two-part test for market participation initially set forth in *Cardinal Towing & Auto Repair v. City of Bedford*, 180 F.3d 686 (5th Cir. 1999), and adopted in *Airlines Serv. Providers Ass'n v. L.A. World Airport* (*LAX*), 873 F.3d 1074, 1080 (9th Cir. 2017).

Although we are troubled by the provisions of California law that make violations of city and county ordinances misdemeanors, we need not decide whether these provisions render the City a regulator rather than a market participant

because we conclude that two civil penalty provisions of the HAO carry the force of law and thus render the City a regulator rather than a market participant. Similarly, because these civil penalty provisions result in the City acting as a regulator, we need not determine whether the City otherwise would be a regulator under the *Cardinal Towing* two-part test set forth in *LAX*, 873 F.3d at 1080. We reverse the district court's grant of summary judgment.

# I

The City owns and operates SFO. In 1970, the City created the San Francisco Airport Commission (Commission) to operate and oversee SFO. The City manages SFO as a self-sustaining enterprise and its taxpayers do not fund the airport. SFO competes with other airports for domestic services in the Bay Area. In 1999, the City introduced the Quality Standards Program (QSP) at SFO, "which establishes contractual requirements for employers at the Airport, including minimum hiring and compensation standards for certain covered employees providing services at the Airport." Under the QSP, covered employees include those who (1) require the issuance of an Airport badge with Airfield Operations Area (AOA) access, or (2) are "directly involved in passenger and facility security and/or safety, including but not limited to checkpoint screening, passenger check-in, skycap and baggage check-in and handling services, custodial services, and AOA perimeter control." Since 1999, the QSP has expanded to cover various airline employees and "to include specific standards for safety, health, hiring, training, equipment, compensation, and benefits for Covered Employees."

The QSP includes a provision concerning fines reading:

> If a Covered Employer defaults with respect to any requirement of the Program, the Airport Director may elect to impose a fine equal to $1,000.00 per violation/employee, per day. The Airport's right to impose such fines shall be in addition to and not in lieu of any and all other rights available to the Airport. Such fine amount may be increased from time to time at the discretion of the Airport Director.

The QSP also contains a severability clause.[1]

In 2009, the City amended the QSP to include the City's Health Care Accountability Ordinance (HCAO) "which requires employers to offer to their Covered Employees certain minimum medical insurance coverage." The HCAO includes a section entitled "Additional Contract Requirements: Liquidated Damages," which included a provision stating: "[t]hat for failure to comply with the requirements of this Chapter, the Agency may require the Contracting Party to pay the City liquidated damages of up to one hundred dollars ($100) for each one-week pay period for each employee for whom the Contracting Party has either not offered health plan benefits or made payments as

---

[1] Section VI G of the QSP states: "Should a court of competent jurisdiction determine that any provision or any application of any provision of the QSP be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other provision which can be given effect without the invalid or unenforceable provision, and to this end the provisions of this QSP shall be considered severable."

required by Section 12Q.3."   S.F. Admin. Code § 12Q 5.1(4).

In 2010, the City entered into two-dozen Lease and Use Agreements (LUAs) for ten-year terms starting in 2011 with different airlines, including all members of A4A. The LUAs obligated the signatory airlines to pay substantial amounts to SFO for use of the facilities and obligated the City to manage and operate SFO using "commercially reasonable efforts" to maximize non-airline revenues. In entering into the LUAs, the airlines agreed to comply with the QSP and the HCAO.

In 2020, the City modified the HCAO by enacting the HAO, which requires certain SFO employers to: (1) offer at least one "platinum" healthcare plan, meaning a plan that provides a level of coverage designed to provide benefits that are actually equivalent to at least 90% of the full actuarial value of the benefits provided; (2) cover all services described in the California Essential Health Benefits Benchmark Plan; (3) offer these plans to all Covered Employees as well as each employee's spouse and dependents; and (4) absorb 100% of the plans' costs with no cost-sharing between employer and employee. The City amended the HAO in 2021 to go into effect on March 21, 2021. The Amended HAO permits employers to offer additional, specified healthcare plans.

There are two options for complying with the HAO: employers "can either offer health plan benefits meeting certain enhanced requirements to each Covered Employee and their dependents or make monetary contributions for the Covered Employee to a City fund (the 'City Option')." The district court explained that the City Option requires employers who do not offer the requisite health plan to pay $9.50 per employee per hour into a Health Access Program

(HAP) established by the City and that "Covered Employees can access the money contributed to the City Option program through Medical Reimbursement Accounts (MRAs)."

The district court noted that if an employer fails to comply with its obligations under the HAO, the City can enforce the HAO by: "(1) charging a violator for any amounts that should have been paid into a HAP account along with a simple annual interest rate of 10%; (2) requiring a violator to pay the City liquidated damages of up to $100 for each one-week pay period for each employee; (3) canceling any contract the City has with the employer; (4) barring the employer from entering into any future contracts with the City for three years; and (5) instituting a civil action against the employer, in which the prevailing party will be entitled to all costs and expenses."

In March 2021, the City and the airlines chose not to execute new 10-year LUAs due to complications arising from the COVID-19 pandemic and instead agreed to modifications of their 2011 LUAs.  The modifications included the extension of the contract term for two years (to 2023) and "the reservation of the rights of the City and the Signatory Airlines with respect to any legal challenges involving the HAO."

On March 31, 2021, A4A filed its complaint against the City in the United States District Court for the Northern District of California alleging that the HAO is preempted by federal law.  In August 2021, the district court agreed to the parties' proposal "that the case should be bifurcated to first resolve on summary judgment the threshold issue to A4A's preemption claims—the City's market participant defense." The City filed its motion for summary judgment, A4A filed

a cross-motion for partial summary judgment, a hearing was held on March 17, 2022, and on April 5, 2022, the district court issued its 35-page order granting the City's motion for summary judgment.

## II

The district court recognized that "federal law generally preempts state or local government action that has 'the force and effect of law.'" *See Am. Trucking Ass'ns v. City of Los Angeles* (*ATA*), 569 U.S. 641, 648-50 (2013). It also noted, however, that "[w]hen a state or local government buys services or manages property as would a private party, it acts as a 'market participant,' not as a regulator and [courts] presume that its actions are not subject to preemption." *See LAX*, 873 F.3d at 1079. The court explained that if the market participant defense applies, A4A's preemption claims are precluded.

A4A argued that (1) "the City acted as a regulator because the HAO has civil and criminal penalties, which are unique governmental functions," and (2) the City cannot meet its burden to show that it acted as a market participant under the two-prong *Cardinal Towing* test as set forth in *LAX*, 873 F.3d at 1080.

The district court first considered whether the fact that pursuant to California Government Code §§ 25132(a) and 36900(a) violations of city and county ordinances could be prosecuted as misdemeanors was sufficient to render the City a regulator. In *ATA*, the Supreme Court held that Los Angeles, in adopting an ordinance that specifically provided that a violation of the ordinance was a violation of criminal law, acted with "the hammer of the criminal law" resulting in Los Angeles "acting in a regulatory rather than proprietary mode." 569 U.S. at 650-51. The district court, noting that

the HAO itself did not itself provide for criminal enforcement, and that it was unclear whether as a matter of California law the Government Code sections rendered every violation of a local ordinance a misdemeanor, concluded that "the HAO does not have criminal penalties."

Next, the parties disputed whether the threat of civil penalties alone precludes the market participant defense. In *ATA*, the Supreme Court noted that "when the government employs such a coercive mechanism, available to no private party, it acts with the force and effect of law, whether or not it does so to turn a profit." *ATA*, 569 U.S. at 65-52. A4A asserted that coercive mechanisms include civil sanctions, but the City responded that there was no binding authority holding civil penalties alone preclude the market participant defense. The district court opined that although "the Ninth Circuit has concluded that a government entity acted as a regulator when it threatened civil penalties, it has not expressly held that civil penalties alone preclude the market participant defense." The court noted that other circuits have held that the threat of civil penalties precluded the market participant defense and proceeded to consider whether the HAO's civil penalties constituted "enforcement mechanisms that are unavailable to private parties."

A4A asserted that the HAO has coercive enforcement mechanisms "because the City unilaterally imposed penalties through legislation." In particular, A4A alleges the legislation allows the City to:

> (i) Charge a violator for any amounts that should have been paid into a HAP account, together with an onerous interest rate; (ii) assess penalties of $100 per week per employee; (iii) cancel any contract the City

has with the employer; (iv) bar the employer from entering into any future contracts with the City for three years; and (v) institute a civil action against the employer in which the prevailing party will be entitled to all costs and expenses.

The district court found A4A's perspective less than persuasive noting that: (a) "these are not coercive mechanisms unilaterally imposed because A4A members voluntarily agreed to these requirements when they chose to extend their LUAs for another two years"; (b) "[t]he City did not coerce A4A, or any airline, to agree to these terms"; and (c) "virtually every case finding regulatory conduct involves imposition of conditions by legislative fiat, not by contract."

The court determined that the alleged civil penalties were "functionally equivalent to ordinary commercial contract terms wherein contract parties may agree to certain consequences for breach." It found that charging the contracting party for certain amounts with an interest rate of 10% was the "equivalent to expectation damages, a normal contract remedy," and that the interest rate was not "onerous" but "the default prejudgment interest rate for breach-of-contract claims under California law." It noted that the LUAs state that an HCAO violation is a material breach and that under California law a material breach is a ground for cancellation of the contract. The district court commented that contracting parties have the right to refuse to do business with a breaching party. It further noted that it is well-established that a private party can institute a civil action for breach of contract and the parties may validly

agree that the prevailing party will be awarded attorneys' fees.

The district court also rejected A4A's assertion that the fines in the HCAO and QSP were coercive civil fines and not common contractual liquidated damages.  A4A claimed that the provision of the HCAO allowing the City to seek "liquidated damages of up to one hundred dollars for each one-week pay period for each employee" was not reasonable.  The district court found that: (a) the liquidated damages provision has been in the HCAO since it was first enacted in 2001; (b) it applies to the airlines through their LUAs and is thus contract based; (c) the LUAs adopted the provision of the HCAO stating that the prescribed liquidated damages are a reasonable estimate of the harm, and (d) if under the particular circumstances, the imposition of prescribed liquidated damages would be penal, the clause would not be enforced.  Moreover, "[t]he City and the airlines were free to argue that imposing liquidated damages would be reasonable or unreasonable, just as parties to private commercial contracts with similar terms are free to do." [2]

Finally, applying the two prongs of the *Cardinal Towing* test, the district court held that the City acted to advance a specific propriety purpose with a sufficiently narrow scope as to "defeat an inference that its primary goal was to encourage a general policy rather than [to] address a specific proprietary problem."  *LAX*, 873 F.3d at 1080.

---

[2] The district court also rejected A4A's assertion that the City Option—paying $9.50 an hour into an account—is itself a penalty.  We need not decide whether the City Option is a coercive mechanism because, as discussed *infra*, we find that the other civil provisions are enough to render the City a regulator rather than a market participant.

## III

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b).   We review a grant of summary judgment de novo.   *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021); *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 447 (9th Cir. 2018).   In reviewing such an order, we "must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law."   *Jones*, 887 F.3d at 447 (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).   On summary judgment, we review the evidence as a whole and "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "An issue of material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jones*, 887 F.3d at 448 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

In this case, the question posed by the cross-motions for summary judgment is whether the City, in enacting and enforcing the HAO, acts as a regulator or a market participant.   *ATA*, 569 U.S. at 649.   We must distinguish "between a government's exercise of regulatory authority and its own contract-based participation in a market." *Id*. We contrast "official, government-imposed policies prescribing binding standards of conduct" with "contractual commitments voluntarily undertaken." *Id.* (cleaned up). The Supreme Court has explained: "[w]hen a State acts as a purchaser of services, it does not regulate the workings of

the market . . . ; it exemplifies them." *Id*. at 650 (quoting *Bldg. & Constr. Trades Council v. Associated Builders & Contractors of Mass./R. I., Inc*., 507 U.S. 218, 233 (1993)) (cleaned up).  A government's use of the "force and effect of law . . . excludes such everyday contractual arrangements" and "targets the State acting as a State, not as any market actor—or otherwise said, the State acting in a regulatory rather than proprietary mode." *Id*. (cleaned up).  Thus, when the government employs "a coercive mechanism, available to no private party, it acts with the force and effect of the law." *Id*. at 651.

## A

Although the district court was concerned that we had "not expressly held that civil penalties alone preclude the market participant defense," we read our precedent as recognizing that a government's use of civil penalties may amount to the "force and effect of law" unavailable to private parties.  In *Chamber of Commerce v. Lockyer*, 463 F.3d 1076 (9th Cir. 2006) (en banc), *rev'd sub nom on other grounds*, *Chamber of Commerce v. Brown*, 554 U.S. 60 (2008), we held that two provisions in a California statute prohibiting employers who receive state grant or program funds in excess of $10,000 from using those funds to assist, promote, or deter union organizing were "regulatory measures that fall outside the market participant exception," *id*. at 1085, but were not preempted by the National Labor Relations Act. The Supreme Court reversed our holding that the provisions were not preempted but did not disturb our determination that the provisions of California law with their civil penalties were regulatory measures.  554 U.S. at 66.  We hold that civil penalty provisions alone may amount to the force and effect of law rendering a government entity a regulator rather than a market participant.

Our recognition that civil penalties may render a government entity a regulator rather than a market participant is consistent with the views of our sister circuits and the California Supreme Court. *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 438 F.3d 150, 157 (2nd Cir. 2006) ("A governmental entity acts as a market regulator when it employs tools in pursuit of compliance that no private actor could wield, such as the threat of civil fines, criminal fines and incarceration."); *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 426 (3rd Cir. 2011) ("Delaware's ability to impose civil penalties upon out-of-state contractors for failure to pay the higher mechanic prevailing wage to unregistered apprentices confirms that its role is not merely that of a market participant."); *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 769 (4th Cir. 2018) (state laws limiting reimbursement rates and preventing air ambulances from seeking additional recovery backed by civil and criminal sanctions have the force and effect of law); *Friends of the Eel River v. N. Coast R.R. Auth.*, 3 Cal. 5th 677, 739 (2017) ("The mechanism sought to be used here—public entity proceedings on a project pursuant to CEQA—is not a mechanism that private market actors could create and require of others.").

**B**

On this record, we find that two penalty provisions of the QSP and the HCAO, which the City may invoke to enforce the HAO, are unique governmental functions that carry the "force and effect of law" resulting in the City "acting in a regulatory rather than proprietary mode." *ATA*, 569 U.S. at 650-51.

First, Section E of the QSP authorizes the Airport Director to "impose a fine equal to $1,000.00 per

violation/employee, per day," and further provides that "[s]uch fine amount may be increased from time to time at the discretion of the Airport Director." This is not a liquidated damages provision because the same section states that "[t]he Airport's right to impose such fines shall be in addition to and not in lieu of any and all other rights available to the airport." *See Ridgley v. Topa Thrift & Loan Ass'n*, 17 Cal. 4th 970, 977 (1998) ("A liquidated damages clause will generally be considered unreasonable . . . if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach."). Moreover, because the Airport Director retains unbridled discretion to increase the fines, the provision is not meant to compensate the City for any contract breach but to penalize the offending employer. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002) (defining liquidated damages as "amount[s] of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement"). Thus, the provision for a $1,000 a day fine per employee with the Airport Director having unbridled discretion to increase the amount of the fine is "a coercive mechanism, available to no private party." *ATA*, 569 U.S. at 651.

Second, the HCAO provides that should an employer fail to comply with its provisions, the employer may be required "to pay the City liquidated damages of up to one hundred dollars ($100) for each one-week pay period for each employee for whom the [employer] has either not offered health plan benefits or made payments as required by Section 12Q.3." S.F. Admin. Code § 12Q.5.1(4). Although phrased as liquidated damages, as this provision is in addition to rather than in lieu of the civil penalty provision

in the QSP, its intent appears to be to penalize the employer rather than to estimate liquidated damages.

Moreover, the City may seek to enforce these provisions through a municipal administrative proceeding before the Office of Labor Standards Enforcement (OLSE). S.F. Admin. Code § 12Q.2.1. The OLSE can assess the HAO violations, initiate administrative proceedings, and issue final administrative decisions. S.F. Admin. Code § 12Q.5.2. Any appeal by a contracting party is heard in the first instance by a hearing officer appointed by the City's Controller. S.F. Admin. Code § 12Q5.2(b) and (c). Only after the hearing officer issues a decision may the contractor "seek review of the hearing officer's decision only by filing in the San Francisco Superior Court a petition for a writ of mandate under California Code of Civil Procedure, section 1094." S.F. Admin. Code § 12Q5.2 (d)(2). Such a governmental enforcement scheme—a prerequisite to seeking judicial review—is not available to private parties and is similar to other schemes which have been held to be regulatory. *See Hydrostorage, Inc v. N. Cal. Boilermakers Loc. Joint Apprenticeship Comm.,* 891 F.2d 719, 730 (9th Cir. 1989) ("The state's involvement does not end with the awarding of the contract. Section 1777.5 is aimed at regulating contractors who work on public contracts. The Division, part of a state agency, monitors and enforces violations of section 1777.5. This amounts to regulation, not merely 'market participation.'"); *Eel River*, 3 Cal. 5th at 738-39 ("[W]hen the state uses enforcement mechanisms that would not be available to a private party, this ordinarily constitutes regulation. The mechanism sought to be used here—public entity proceedings on a project pursuant to CEQA—is not a mechanism that private market actors could create and require of others."). As the California Supreme

Court noted in *Eel River*, a "private actor would be unable, even by contract, to create and implement a system of *government* proceedings." *Id*. at 739.

The City responds that because the HAO incorporates long-established penalty provisions in the QSP and HCAO, the HAO does not coerce compliance through civil penalties. But the airlines' willingness to abide by these civil penalties in the past does not mean that they are not coercive or that A4A cannot challenge them now. A4A asserts that the HAO substantially changed the cost of doing business at SFO. Higher costs bring the coercive nature of civil penalty provisions into focus. There is no suggestion that the question of whether these provisions render the City a regulator rather than a market participant has ever been judicially considered. Furthermore, our determination that the provisions render the City a regulator does not necessarily mean that the provisions are illegal or void.[3]

## IV

Because we conclude that the civil penalty provisions carry the force of the law rendering the City a regulator rather than a market participant, we do not decide the other issues raised by A4A on appeal. We note that holding that all California city and county ordinances carry "the hammer of the criminal law" would have widespread consequences. The Supreme Court in *ATA* recognized that "[i]n some cases the question whether governmental action has the force of law may pose difficulties; the line between regulatory and proprietary conduct has soft edges." *ATA*, 569 U.S. at 651.

---

[3] Because our determination that the penalty provisions render the City a regulator is not a decision that the provisions are "invalid or unenforceable," the QSP's severability clause is not implicated.

Moreover, it is not clear whether "the hammer of the criminal law" requires some likelihood of criminal prosecution rather than a theoretical possibility.    As a resolution of this difficult issue is not necessary to a determination that the City acts as a regulator rather than a market participant, we do not address it.

Similarly, we decline to address A4A's assertion that the City acts as a regulator under the *Cardinal Towing* test as set forth in *LAX*.  We note that in addition to asserting that the City acts as a regulator under *LAX*, A4A also argues that in *LAX* we adopted an inaccurate reading of the Supreme Court's adoption of the *Cardinal Towing* test and has therefore preserved this argument.

We hold that the civil penalty provisions incorporated into the HAO are unique governmental functions that have the "force and effect of law" rendering the City a regulator rather than a market participant.  The district court's grant of summary judgment for the City is **REVERSED** and the case is **REMANDED** to the district court for further proceedings.

Schroeder, Circuit Judge, dissenting:

We learn once again that no good deed goes unpunished. In the midst of a pandemic, the City and County of San Francisco amended San Francisco International Airport's contract with the airlines to upgrade the health insurance the airlines were required to provide their employees. This was done to protect those employees, the members of the public using the airport, and to give the airport a public confidence edge in the highly competitive Bay Area market that has other major airports in both San Jose and Oakland. There is no question the contracts authorized the amendment procedure the City used.

The district court, in a thorough opinion, ruled that the City was acting as a market participant, not as a regulator. It applied the principles the Supreme Court has enunciated in *Am. Trucking Ass'ns, Inc. v. City of Los Angeles ("ATA")*, 569 U.S. 641, 650–52 (2013) and quoted *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 282 (2014) to conclude the amendment does not have the force and effect of law because it does not constitute "binding standards of conduct that operate irrespective of any private agreement." The majority does not appear to disagree with that conclusion.

The majority nevertheless reverses the district court and holds that the City was acting as a regulator, not because it regulated conduct or utilized standards that would apply outside the contract, but because the contract included excessive liquidated damages provisions. Such contractual overreaching is not uncommon, however, and can occur in private contracts as well as government contracts. There is nothing governmental or regulatory about it. The district court correctly observed that in order to be enforceable, liquidated damages must represent the result of a reasonable

endeavor by the parties to estimate fair compensation for any loss that may be sustained.  Indeed, the City and the airlines stipulated that the HCAO's liquidated damages were appropriate because actual damages "would be significant and substantial" and "extremely difficult to determine or quantify."  S.F. Admin. Code § 12Q.5.1(3).

Even assuming the majority is correct that the provisions, if enforced, would exact excessive amounts, then the provisions would not be enforced.  *See In re Late Fee & Over-Limit Fee Litig.*, 741 F.3d 1022, 1026 (9th Cir. 2014); *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925 (9th Cir. 2003) (per curiam) (finding the liquidated damages provision to be unenforceable as a penalty under California law); *see also* Restatement of the Law, Consumer Contracts § 5 (2017) ("An unconscionable contract or term is unenforceable"); Cal. Civ. Code Ann. § 1670.5(a) (West 1985) (courts may "limit the application of any unconscionable clause").

The majority opinion thus represents either a distortion or a fundamental misunderstanding of preemption principles.  Because of the Supremacy Clause, federal law preempts conflicting state and local laws, U.S. Const. art. VI., § 2, or when a state or local entity acts in a regulatory capacity, i.e., enforces law that conflicts with federal law.  But federal law cannot preempt actions taken in a proprietary capacity that do not have the force and effect of law.  *See Bldg. & Const. Trades Council v. Associated Builders & Contractors ("Boston Harbor")*, 507 U.S. 218, 227 (1993) ("[P]re-emption doctrines apply only to state . . . *regulation*").  Distinguishing "between government as regulator and government as proprietor," the Supreme Court held in *Boston Harbor* that the National Labor Relations Act did not preempt enforcement of a collective-bargaining

agreement by a Massachusetts water authority acting as the owner of a construction project. *Id.* at 227. Here, the City is operating an airport and acting pursuant to a contract with the airlines that use the airport. It is not regulating conduct outside the airport and has not explicitly incorporated state law into the contract.

The majority says the City was acting as a regulator because the liquidated damages provisions are "coercive." It thus imposes a standard that has nothing to do with state law or state regulation, and consists of an adjective that could describe any number of provisions in private as well as public contracts. To be sure, the Supreme Court used the adjective in *ATA*, 569 U.S. at 650, but to describe the effect of the enforcement mechanism in that case, not the reason the contract provisions were deemed to be regulatory. What made the contracts regulatory, i.e., having the force and effect of law, was the use of the state's criminal law to punish violations. The Court explained that "the contract here functions as part and parcel of a governmental program wielding coercive power over private parties, backed by the threat of criminal punishment." *Id.* It was the invocation of the criminal law that transformed the contract into governmental regulation because the criminal law is a "hammer" which "only a government can wield." *Id.* at 651. Nothing of the sort appears in these contracts.

Indeed, the airlines recognize there is no criminal enforcement provision here. The airlines' central argument is that we should treat this case like *ATA* because, although the HAO does not make any reference to the criminal law, there is a California statute that makes a violation of any city or county ordinance a misdemeanor. *See* Cal. Gov't Code § 25132(a) (county); *id.* § 36900(a) (city). The airlines contend that because of the statute there is, at least

theoretically, criminal punishment available for violation of the HAO. The district court correctly recognized that, unlike in *ATA*, the contract has no criminal penalties, and that the airlines' interpretation "would produce absurd results" as "[e]very municipal ordinance would be criminalized."

The other cases cited in the majority opinion actually support the City's position that it was acting as a proprietor rather than a regulator. In *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 426 (3d Cir. 2011) and *Hydrostorage, Inc. v. N. Cal. Boilermakers Loc. Joint Apprenticeship Comm.*, 891 F.2d 719, 730 (9th Cir. 1989), the government was enforcing law beyond the provisions of the contract. The conduct was therefore regulatory. Here, the City has acted under its contractual authority to amend the HCAO by creating additional standards for minimum medical insurance coverage offered to employees. The remaining cases cited by the majority do not support its position. *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 769 (4th Cir. 2018) dealt with both civil and criminal sanctions. *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 438 F.3d 150, 157 (2d Cir. 2006) held that an ordinance requiring garbage collection and disposal by local entities did not violate the Commerce Clause.

The majority cites *Friends of the Eel River v. N. Coast R.R. Auth.*, 3 Cal. 5th 677, 739 (2017) to suggest that the use of the state's labor relations office to consider contractual disputes involving labor issues makes the HAO regulatory. In *Friends of the Eel River*, the California Supreme Court noted that the use of a public hearing to consider modifying a railroad right of way would be regulatory. *Id.* The goal of many public hearings is "to facilitate public comment rather than allow the party to protect their interest." 2 Admin. L. & Prac. § 5:10 (3d ed.). California administers all its labor

standards issues, not through public hearings but through its Office of Labor Standards Enforcement. The existence of the office does not make all provisions in government contracts dealing with wages, hours, and working conditions regulatory. There are government agencies to adjudicate most public contract disputes. *See, e.g.,* 41 U.S.C. § 7105(a) (Defense Department's Armed Services Board of Contracts Appeals). Their operation does not transform contract dispute resolution into regulation.

In sum, the HAO does not incorporate criminal penalties, or create binding standards that would give it the force and effect of law. Nor is the City attempting to enforce the HAO against parties other than the signatories to the contract. There is at most the inclusion of a penalty clause that may be unenforceable. Yet the majority holds that provision is enough to render the HAO regulatory conduct rather than the act of a market participant seeking to make the airport environment safer for its users. This decision makes the airport less safe, but perhaps more important, adversely affects the stability of all state and local contracts by creating the threat of litigation over previously unremarkable boilerplate.

I regretfully dissent.