UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| AIRLINES FOR AMERICA,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>　　　　Defendants. | Case No. 21-cv-02341-EMC<br><br>**ORDER ON PARTIES' JOINT DISCOVERY LETTER OF APRIL 10, 2025**<br><br>Docket No. 106 |

## I.　INTRODUCTION

Before the Court is the parties' joint discovery letter of April 10, 2025. The letter concerns two discovery disputes regarding whether Airlines for America ("A4A") is entitled to depose 1) former Deputy City Attorney Lisa Powell, and 2) a witness on two topics in A4A's 30(b)(6) deposition notice. The two 30(b)(6) deposition topics seek testimony about "the drafting and adoption of the [Healthy Airport Ordinance ("HAO")], and proposed amendments to the HAO since April 6, 2021." Dkt. 106 at 1 (Joint Discovery Letter).[1] The Court denies both of A4A's requests as they seek irrelevant information. *See* Fed. R. Civ. P. 26.

---

[1] The contested deposition topics are: "1. The drafting, consideration and adoption of the HAO, including (i) who conceived of and drafted the HAO; (ii) the process by which the findings section of the HAO was drafted, including who was responsible for drafting that section and why it included the findings that it did; (iii) the reasons why the HAO covers the specific set of employees that it covers, including who helped decide on that scope; and (iv) the reasons why the HAO requires health plans to provide coverage for all services specified in the California Essential Health Benefit Benchmark Plan, including who suggested or endorsed that requirement;" and "2. All amendments or proposed amendments to the HAO since April 6, 2021, including any conversations with third parties CONCERNING any amendment or potential amendment."

Case 3:21-cv-02341-EMC     Document 113     Filed 05/19/25     Page 2 of 7

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense and proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, **the parties' relative access to relevant information**, the parties' resources, the importance of the discovery in resolving the issues, and whether the **burden** or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26 (emphasis added). In other words, information is discoverable if that information is both "relevant to any party's claim or defense and proportional to the needs of the case." *Id.*

## III. DISCUSSION

Here, the discovery A4A seeks is irrelevant. A4A argues that it needs to depose Ms. Powell and a witness on the two challenged 30(b)(6) deposition topics to prove that the ordinance in dispute "was conceived and lobbied for by certain local San Francisco chapters of airport worker unions…who were seeking specific healthcare benefit entitlements that they had failed to secure from their employers through their collective bargaining processes." Dkt. 1 (Compl. ¶ 56). A4A argues that this information is relevant to its Railway Labor Act ("RLA") preemption and Contracts Clause claims.

### A. RLA Preemption Claim

Information targeting how the HAO was drafted bears little to no weight on A4A's RLA preemption claim. Under *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994), the RLA preempts a state law only when resolving the claim requires interpreting a collective bargaining agreement ("CBA") or if the claim arises entirely from the CBA. *See Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 260 (1994) (holding that RLA preemption applies "only if a state-law claim is dependent on the interpretation of a CBA, and that purely factual questions about an employee's conduct and the employer's conduct and motives do not require interpreting such an agreement's terms"); *see Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018) ("Consistent with this precedent [in *Hawaiian Airlines*], we recognize RLA…preemption only where a state law

2

1 claim arises entirely from or requires construction of a CBA").

2 Contrary to A4A's argument, the political backdrop or subjective motive behind the
3 ordinance does not speak to whether the RLA preempts the HAO.  In *Johnson v. Rancho Santiago*
4 *CCD*, 623 F.3d 1011 (9th Cir. 2010), the Ninth Circuit rejected the relevance of subjective
5 motives behind an agreement in determining preemption under the National Labor Relations Act
6 ("NLRA").[2]  There, the court decided:

> Whether or not plaintiffs are correct that the District had ulterior motives in adopting the PSA, we are quite certain that **Congress did not intend for the NLRA's** or ERISA's **preemptive scope to turn on state officials' subjective reasons for adopting a regulation or agreement.** *Cf. N. Ill. Chapter of Associated Builders and Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1007 (7th Cir.2005) **("Federal preemption doctrine evaluates what legislation *does*, not why legislators voted for it or what political coalition led to its enactment."** (emphasis in original)).

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1026 (9th Cir. 2010) (finding that
the NLRA did not preempt a project labor agreement because the agreement fell within the market
participant exception to preemption) (emphasis added).  To determine preemption, courts look to
the operation and the economic *effects* of a state regulation on the collective bargaining process,
rather than the political motives behind the regulation.  Thus, discovery on the drafting,
consideration, and adoption of the HAO is irrelevant to whether the claim arises from or requires
construction of a CBA.

A4A's argument to the contrary is unpersuasive.  A4A's citation to *Chamber of Commerce v. Bragdon*, 64 F.3d 497 (9th Cir. 1995) is inapposite.  In *Bragdon*, the Ninth Circuit held that the NLRA preempted an ordinance requiring employers to pay prevailing wages to employees on certain private construction projects, not because of political motives behind the ordinance, but rather because the ordinance "affect[ed] the bargaining process in a[n]…invasive and detailed

---

[2] As the parties recognize by citing to NLRA cases in their joint discovery letter, the preemption analysis under the NLRA and the RLA are similar.  While preemption under the NLRA is broader because the NLRA preempts state regulation that is arguably protected, prohibited, or intentionally left unregulated by federal labor law, that does not change the analysis herein.  *See San Diego Building Trades Council, Millmen's Union v. Garmon*, 359 U.S. 236, 244 (1959); *see Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Emp. Rels. Comm'n*, 427 U.S. 132, 140 (1976).

fashion." *Chamber of Com. of U.S. v. Bragdon*, 64 F.3d 497, 502–03 (9th Cir. 1995). Specifically, the ordinance enforced a "minimum wage and benefit package…promulgated by the Director of the Department of Industrial Relations of the State of California,…developed by averaging the bargains struck by…employers and employees" for "public works projects" and not the specific parties engaged in the relevant private construction project. *Chamber of Com. of U.S. v. Bragdon*, 64 F.3d 497, 502–03 (9th Cir. 1995). In so holding, *Bragdon* did not consider political motives behind enacting the ordinance. Instead, the court examined whether the ordinance "interfere[d] with the bargaining process." *Bragdon*, 64 F.3d at 501.

Applied here, the question is whether the HAO interferes with the bargaining process by imposing conditions that the relevant parties did not negotiate. Discovery on the drafting, consideration, and adoption of the HAO is irrelevant to this analysis.

### 1. Contracts Clause Claims

Similarly, discovery on the drafting, consideration, and adoption of the HAO has marginal relevance to A4A's Contracts Clause claims under the federal and state constitutions ("Contracts Clause").[3] Information on how the HAO was drafted is irrelevant to determining whether the HAO violates the Contracts Clause because each step of the inquiry is objective.

To determine whether a law violates the Contracts Clause, courts first evaluate "whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Ashley Sveen v. Kaye Melin*, 584 U.S. 811, 819 (2018) (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). To so determine, courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.*

Should the plaintiff demonstrate a substantial impairment, courts evaluate whether the regulation furthers a significant and legitimate public purpose. "If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public

---

[3] "'Both the United States and California Constitutions contain provisions that prohibit the enactment of laws effecting a 'substantial impairment' of contracts…'" *Alameda Cnty. Deputy Sheriff's Ass'n v. Alameda Cnty. Employees' Ret. Ass'n*, 9 Cal. 5th 1032, 1074 (2020) (citing *Cal Fire Loc. 2881 v. California Pub. Employees' Ret. Sys.*, 6 Cal. 5th 965, 977 (2019).

4

purpose behind the regulation, such as the remedying of a broad and general social or economic problem." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12 (1983). "The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Id.* at 412. Accordingly, this inquiry involves evaluating whether the regulation "protect[s] a broad societal interest rather than a narrow class." *Allied*, 438 U.S. at 249.

If the regulation has a legitimate public purpose, courts evaluate "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Sveen*, 584 U.S. at 819 (citing *Energy*, 459 U.S. at 411–412).[4] That is, "[o]nce a legitimate public purpose has been identified, the next inquiry is whether the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Id.* (citing *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 22 (1977)). To determine whether "the means chosen to implement these purposes [is] deficient," courts "analyze…the [regulation's] effect." *Energy*, 459 U.S. at 418.

A4A argues that information on how the HAO was drafted is relevant to its Contracts Clause claim "because legislation that merely provides 'a benefit to special interests' does not further a legitimate public purpose." Dkt. 106 at 2 (citing *Energy,* 459 U.S. at 412). *See Allied*, 438 U.S. at 249.

However, discovery on the drafting, consideration, and adoption process of the HAO is irrelevant to determine whether the HAO furthers a significant and legitimate public purpose because that inquiry turns on an objective analysis of the public record. In particular, courts have looked at the legislative record and the terms of the statute. Specifically, courts look to any "legislative intent in the record" to determine the public purpose of the regulation. *Id.* 247-49. This includes public statements about the legislation. *See Apartment Ass'n of Los Angeles Cnty.,*

---

[4] "As is customary in reviewing economic and social regulation,…courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 22–23 (1977).

5

*Inc. v. City of Los Angeles*, 10 F.4th 905 (9th Cir. 2021) (relying on legislature's stated public purposes in relevant municipal code and ordinance to hold that "City fairly ties the moratorium to *its stated goal* of preventing displacement from homes, which the City reasonably explains can exacerbate the public health-related problems stemming from the COVID-19 pandemic") (emphasis added). Courts have also examined the terms of the statute to determine whether the law furthers a significant and legitimate public purpose. *See Allied*, 438 U.S. at 248-49. In *Allied*, the Court held that a legislation did not "protect a broad societal interest" because there was scant "indication of legislative intent in the record" identifying a public purpose and it "clearly [had] an extremely narrow focus." *Id.* at 247-49. In particular, "[i]t applie[d] only to private employers who have at least 100 employees, at least one of whom works in Minnesota, and who have established voluntary private pension plans, qualified under § 401 of the Internal Revenue Code" and "it applie[d] only when such an employer closes his Minnesota office or terminates his pension plan." *Id.* at 248.

A4A fails to point to persuasive case authority for the proposition that non-public information may be mined to determine under the Contracts Clause whether the challenged regulation was enacted for a significant and legitimate public purpose. Thus, the discovery sought is not material to identifying the City's interest in enacting the HAO.

Moreover, the other prongs of the constitutional analysis of the Contracts Clause claim – pertaining the whether the means adopted reasonably fit the purpose of the statute – is also an objective test. *See Sveen*, 584 U.S. at 819 (regarding substantial impairment of contractual relationship) and *Energy*, 459 U.S. at 418 (regarding reasonableness of measure). Again, the discovery sought is immaterial to those prongs of the constitutional analysis.

/
/
/
/
/
/

## IV. CONCLUSION

For the aforementioned reasons, A4A's discovery requests at issue in the parties' joint discovery letter are **DENIED.**

**IT IS SO ORDERED**.

Dated: May 19, 2025

_____
EDWARD M. CHEN
United States District Judge

7